IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SILVESTRE GARCIA GONZALEZ,

    Petitioner,                             No. CIV S-04-1307 MCE DAD P

    vs.

A.K. SCRIBNER, Warden, et al.,

    Respondents.                      FINDINGS & RECOMMENDATIONS

/

        Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a judgment of conviction entered against him on May 31, 2004, in the El Dorado Superior Court on charges of attempted first-degree murder with use of a firearm. He seeks relief on the grounds that: (1) there was insufficient evidence to support his conviction on the charge of attempted murder; and (2) the trial court's instruction to the jury on imperfect self-defense impermissibly informed jurors that the defense was not relevant to the crime of cultivation of marijuana. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

1

PROCEDURAL AND FACTUAL BACKGROUND[1]

Defendants Luis Lopez Arriaga and Silvestre Garcia Gonzalez were convicted of two counts of attempted murder, and the jury found that the crimes were willful, premeditated, and deliberate (Pen. Code, §§ 187, 664, subd. (a); further section references are to the Penal Code unless otherwise specified). As to each offense, the jury found that Arriaga personally used, personally discharged, and caused great bodily injury with, a firearm (§§ 12022.5, subd. (a)(1); 12022.53, subds. (a) - (d) and that Gonzalez was armed with a firearm (§ 12022, subd. (a)(1)).

For each of his convictions, Arriaga was sentenced to state prison for life with the possibility of parole, plus 25 years to life for the firearm enhancement, the terms to run consecutively. For each of his convictions, Gonzalez was sentenced to prison for life with the possibility of parole, plus one year for the armed enhancement, the terms to run consecutively.

On appeal, defendants raise numerous claims of error. Among other things, they contend the trial court erred in instructing on transferred intent. The People properly concede the error but argue it was harmless. We conclude the erroneous transferred intent instruction was prejudicial with respect to the convictions and special findings on count two, the attempted murder of Matthew Hunt. Therefore, we must reverse those convictions and findings. We otherwise find no reversible error and thus shall affirm the convictions and special findings on count one, the attempted murder of William Hunt.

FACTS

While deer hunting with his eight-year-old son, Matthew, and four-year-old son, Riley, William Hunt heard a shot and was hit in the left wrist and arm by a shotgun blast.[2] As he turned to look for the boys, he heard a second shot and was struck in the midsection. He then saw that Matthew had been shot in the forehead and face and was lying prone.

Shortly after the shots were fired, defendant Arriaga and his son, Mario Lopez, came down the hill. Arriaga was carrying a shotgun and looked angry. Lopez appeared upset. The men helped

---

[1] The following summary is drawn from the January 22, 2003 opinion of the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-4, filed in this court on August 20, 2004. See lodged document entitled "Unpublished opinion by the California Court of Appeal, Third Appellate District, Case No. C038855."

[2] For simplicity and to avoid confusion, we hereafter will refer to the Hunts by their first names.

2

William and the boys down the hill to William's truck. William, an emergency medical technician, was able to provide preliminary care to himself and Matthew. He then got into his truck and began honking the horn. William's brother, Donald, who was hunting in a nearby area, heard the horn and responded. Donald drove the truck out to the highway, where they came upon a forest service crew. The crew provided first aid while emergency transportation was arranged. Both victims survived.

The mountain property on which the Hunts were hunting is a large parcel known as the Davis property. It is held in a trust established for the benefit of the trustors' grandchildren. William and Donald are among those grandchildren. The Hunts also have access to a contiguous parcel, known as the Bacchi property, owned by relatives of the Hunts.

Defendant Gonzalez, who was married to a sister of William and Donald Hunt, had spent time on the properties with his wife. An investigation revealed that Gonzalez used the properties for the surreptitious cultivation of large amounts of marijuana. About a month before the shootings, law enforcement agents had found and destroyed three large gardens on the Bacchi property. It is apparent, however, that they did not discover and eradicate all of the marijuana being grown in the area.

Defendant Arriaga's son, Mario Lopez, testified that during the summer before the shootings, Gonzalez hired Arriaga to stay on the property in order to tend and guard the marijuana gardens. Gonzalez gave Arriaga a shotgun and told him to shoot anyone that came near the marijuana. (Lopez attempted to describe the comment as a joke and said that Gonzalez had been drinking at the time.) Another of Arriaga's sons, Arturo Lopez, testified that he heard Gonzalez tell other workers to shoot anyone who came near the marijuana.

From time to time, Mario Lopez would give Gonzalez a ride to the property. On a couple of occasions, Mario took his sons there to fish in the lake. Mario and his sons went to the property on the day of the shootings.[3] As Mario approached the area where Arriaga was, he heard a gunshot and then, seconds later, heard another. He ran to where the shots came from and saw William, wounded and sitting on a log. He saw Arriaga nearby with a shotgun. Mario told Arriaga to drop the gun and, at Mario's direction, they helped the victims.

---

[3] Mario testified that Gonzalez had asked for ride [sic] to the property on the morning of the shootings. However, when Mario arrived at Gonzalez's home, he did not appear to be there. Mario assumed that Gonzalez had gotten another ride to the property, so Mario and his sons drove there without him.

3

After the shootings, both defendants fled from the region. Gonzalez ultimately was located and arrested in Rohnert Park, Sonoma County. Arriaga was located and arrested in Sunnyvale, Santa Clara County. We later will note other aspects of the evidence to the extent relevant to our discussion of the issues presented.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de</u> <u>novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

/////

4

1  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

2  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

3        The court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

5  court reaches a decision on the merits but provides no reasoning to support its conclusion, a

6  federal habeas court independently reviews the record to determine whether habeas corpus relief

7  is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

8  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

9  reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

10 AEDPA's deferential standard does not apply and a federal habeas court must review the claim

11 de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

12 1167 (9th Cir. 2002).

13 II.  Petitioner's Claims

14    A.  Sufficiency of the Evidence

15       Petitioner was convicted of the attempted murder of William Hunt on the theory

16 that he was vicariously liable for the crime as an aider and abettor or co-conspirator of co-

17 defendant Arriaga.  (See Opinion at 10; Reporter's Transcript on Appeal (RT) at 665 (jury

18 instruction on aiding and abetting liability); RT at 669-70 (jury instruction on liability of a co-

19 conspirator)).  Under California law, liability as an aider and abettor or co-conspirator is limited

20 to acts that are the "natural and probable" consequences of the targeted offense.  People v.

21 Prettyman, 14 Cal. 4th 248, 260 (1996) (aiding and abetting); People v. Hardy, 2 Cal. 4th 86,

22 188-89 (1992) (conspiracy).  In this case, the targeted offense was the cultivation of marijuana.

23 (See RT 665, 668-70.)  Liability in this context "is measured by whether a reasonable person in

24 the defendant's position would have or should have known that the charged offense was a

25 reasonably foreseeable consequence of the act aided and abetted."  (Opinion at 10-11.)  To be

26 /////

5

1 reasonably foreseeable, "it is enough that the offense was a possible consequence which might
2 reasonably have been contemplated." (Id. at 11.)

3 Petitioner claims that the evidence introduced at his trial was insufficient to
4 support his conviction on the charge of attempted murder on an aider and abetter/co-conspirator
5 theory because the shooting of the Hunts was not a natural and probable consequence of the
6 cultivation of marijuana. He notes that the prosecutor argued to the jury that Arriaga believed the
7 person he was shooting at was petitioner because he thought petitioner may have stolen some of
8 the marijuana and was coming back to get more. (RT at 718.) Petitioner argues that his own
9 murder could not be a "natural and probable consequence" of the marijuana growing operation.
10 (Am. Pet. at 5a.) In this regard, petitioner explains:

> It is undisputed that petitioner was not the shooter and was not at the scene of the shooting.
>
> The prosecution's theory of the case was that the shooter, codefendant Arriaga, shot at the victims because he mistakenly believed that they were petitioner. The theory was that Arriaga was in conspiracy with petitioner to cultivate marijuana. Believing that petitioner was attempting to steal the marijuana from him, Arriaga shot at him. As the prosecutor told the jury, "[Arriaga] thought it was [petitioner] and he fired." (RT 718). Because Arriaga shot at a figure he believed was petitioner, his shooting could not have been a natural and probable consequence of the conspiracy which he and petitioner allegedly entered into, i.e., cultivation of marijuana.
>
> Therefore, there was insufficient evidence that the shooting was a natural and probable consequence of the target offense, cultivation of marijuana. Instead, it was an independent act by Arriaga.

(Id.)

The California Court of Appeal rejected petitioner's arguments, reasoning as follows:

> The marijuana growing operation in which Gonzalez participated was not a small-scale, backyard enterprise. It was carried out in a clandestine manner in a remote location. The gardens that law enforcement officers located and eradicated before the shootings contained over 1,800 plants. The gardens that were not found

6

before the shootings included about 1,250 more plants. The street value of the crop was estimated to be in the millions of dollars. It can take many months to plant, nurture, and harvest such a crop.

A large-scale clandestine marijuana growing operation, like that occurring on the Davis and Bacchi properties, presents certain potentialities: (1) innocent persons who are hiking, hunting, or otherwise enjoying nature may inadvertently come upon the operation; (2) not-so-innocent persons who learn of the operation may attempt to raid and steal all or part of the crop; and (3) principals in the operation may endeavor to protect it, often with the use or threat of the use of deadly force. (citation omitted.) Because the potential for violence is great, it is foreseeable that someone may be injured or killed.

More importantly, there was evidence that Gonzalez hired Arriaga to stay at the site of the growing operations, told him to guard the crops, and gave him a shotgun for that purpose. And there was evidence that Gonzalez told Arriaga to shoot anyone who came near the crop. This amply supports a finding that the shootings were the natural and probable consequence of the criminal activity in which Gonzalez participated.

In arguing the evidence is insufficient, Gonzalez relies on an extrajudicial statement of Mario Lopez. At the time of the shootings, Donald and William Hunt recognized Lopez as someone they had seen with their brother-in-law, Gonzalez. Donald identified a photograph of Lopez, and investigators located him. Lopez related the essence of what had happened. But he left out the fact the shooter was his father, Arriaga; instead, he described the shooter as an older man called Ta-Ta. During that statement, Lopez said Ta-Ta thought the man he shot at was Gonzalez.

At trial, Lopez was equivocal with respect to Arriaga's statements at the time of the shooting. He conceded he had told the police that Arriaga thought the man was Gonzalez. However, he also stated that Arriaga did not say he was going to kill Gonzalez. Lopez said Arriaga had related that he saw the man with the gun (William) walking around. Fearing that he was going to be shot, Arriaga shot first. Lopez also said that Arriaga had discovered some of the marijuana had been harvested during the night and that he had discovered stacks of the harvested marijuana awaiting retrieval. Arriaga was very angry, so he staked out the harvested plants to await the return of the culprits. That was when he saw William walking around with a gun and shot at William.

Gonzalez, seizing upon Lopez's earlier statement that Arriaga thought the intruder was Gonzalez, argues "the shootings were not a natural and probable consequence of the targeted marijuana cultivation, but were, rather, fresh and independent products of

7

> Arriaga's mind, outside of and completely foreign to the common design." We reject this argument.
>
> First, in considering the sufficiency of the evidence, we view the record in a light most favorable to the verdicts of the jury. (citations omitted.) The jury was not required to believe Lopez's earlier statement, and the other evidence is otherwise ample to sustain the verdicts.
>
> Second, the intent to kill required for attempted murder is directed to the person of the victim, not his identity. (citations omitted.) What is essential is that the defendant intend to kill the person he attacks, not that he know the identity of the person. Our Supreme Court long ago put the matter succinctly: "If A, intending to murder B., shoots C., supposing C. to be B., and wounds C., he is guilty of an assault with intent to murder C. Notwithstanding A.'s mistake, C. is the person whom he assaulted, and whom he intended to kill." (citation omitted.)
>
> In sum, the evidence established that Gonzalez entered into a criminal enterprise to cultivate large amounts of marijuana. Under the circumstances presented, the attempted murder of someone who inadvertently blundered upon the enterprise was a natural and probable consequence of the scheme. The danger turned to actuality when William and his sons approached the cultivation site. When that happened, Gonzalez's criminal cohort, Arriaga, attempted to murder William and possibly Matthew. The evidence amply supports Gonzalez's conviction for the attempted murder committed by his cohort.

(Opinion at 12-15.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). A petitioner for a federal writ of habeas corpus "faces a heavy burden when

1  challenging the sufficiency of the evidence used to obtain a state conviction on federal due
2  process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005).  In order
3  to grant the writ, the federal habeas court must find that the decision of the state court reflected
4  an objectively unreasonable application of Jackson and Winship to the facts of the case.  Id.

5         The court must review the entire record when the sufficiency of the evidence is
6  challenged in habeas proceedings. Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985),
7  vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is
8  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw
9  reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  If the trier of
10 fact could draw conflicting inferences from the evidence, the court in its review will assign the
11 inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).  The
12 relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether
13 the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th
14 Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced beyond a
15 reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors
16 reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas court
17 determines sufficiency of the evidence in reference to the substantive elements of the criminal
18 offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

19        Viewing the evidence in the light most favorable to the verdict as required, the
20 undersigned concludes that there was sufficient evidence from which a rational trier of fact could
21 find beyond a reasonable doubt that petitioner was guilty of the attempted murder of William
22 Hunt on an aider and abetter/co-conspirator theory of liability.  The shooting of William Hunt
23 was a reasonably foreseeable consequence, as that term is defined under California law, of the
24 cultivation of marijuana under the facts of this case.  The state appellate court opinion rejecting
25 petitioner's claim in this regard was a reasonable construction of the evidence and was not
26 contrary to or an objectively unreasonable application of federal law. See Woodford v. Visciotti,

537 U.S. 19, 25 (2002); see also 28 U.S.C. § 2254(d)(1). Accordingly, petitioner is not entitled to habeas relief on this claim.

### B. Jury Instruction

Petitioner's jury was instructed with CALJIC No. 5.17, as follows:

> A person who attempts to kill another person in the actual but unreasonable belief in the necessity to defend himself against imminent peril or great bodily injury, attempts to kill unlawfully, but does not harbor malice aforethought and is not guilty of attempted murder. This would be so even though the person in the same situation seeing and knowing the facts would not have had the same belief. Such an actual but unreasonable belief is not a defense to the crime of attempted voluntary manslaughter.
>
> As used in this instruction, an imminent peril or danger means one that is apparent, present, immediate and must be instantly dealt with, or must so appear at the time to the would-be slayer.
>
> However, this principle is not available and malice aforethought is not negated if the defendant by his unlawful or wrongful conduct created the circumstances which legally justified this [sic] adversary's use of force or attack.
>
> The crime of cultivation of marijuana does not justify the use of force or attack.

(RT at 680.) Petitioner claims that the last sentence of this instruction violated his right to due process, apparently under the theory that it improperly informed the jury that the defense of imperfect self-defense was not available to petitioner under the circumstances of this case. (Am. Pet. at consecutive p. 7.)

Respondents argue that petitioner's challenge to CALJIC No. 5.17 is unexhausted because "a review of the Petitions for Review filed in the California Supreme Court reveals this claim was not presented to that court for consideration." (Answer at 8.) However, in his opening brief on appeal, petitioner "join[ed] in all arguments raised by co-appellant Arriaga that inure to [petitioner's] benefit." (Lodged document entitled "Petitioner's [Gonzalez's] Opening Brief, California Court of Appeal, Third Appellate District, Case No. C038855," at 30.) In his opening brief on appeal, Arriaga challenged the trial court's use of CALJIC No. 5.17, just as he does here.

1  (See Lodged document entitled "Arriaga's Opening Brief, California Court of Appeal, Third
2  Appellate District, Case No. C038855," at 46-51.)  Accordingly, petitioner's jury instruction
3  claim was properly exhausted.  Moreover, even if petitioner's jury instruction claim has not been
4  exhausted in state court, this court would recommend that the claim be denied on the merits for
5  the reasons set forth below.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas
6  corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the
7  remedies available in the courts of the State").

8  The California Court of Appeal rejected petitioner's challenge to the jury
9  instruction in question, reasoning as follows:

> The last sentence of this instruction was added by the court to the standard instruction.  Arriaga contends the addition of the sentence was misleading because it "erroneously suggested that an individual involved in marijuana cultivation could not invoke the doctrine of imperfect self-defense."
>
> Neither self-defense nor imperfect self-defense can be invoked by a defendant whose own wrongful conduct, such as the initiation of a physical assault or the commission of a felony, has created circumstances under which his adversary's attack or pursuit is legally justified. (citation omitted.)  The third paragraph of the court's instruction to the jury accurately conveyed this limitation to the jury.  However, without more, the instruction could lead the jurors to speculate about the type of conduct by the defendant that would justify the use of force or an attack by others.  The court added the single-sentence fourth paragraph for the obvious purpose of informing the jury that Arriaga's participation in the cultivation of marijuana could not justify the use of force or an attack upon him, and thus could not preclude him from asserting imperfect self-defense.
>
> It was manifestly proper for the trial court to modify the standard instruction to avoid speculation by the jury. (citation omitted.)
>
> Nevertheless, Arriaga argues the instruction could have misled the jury into believing that he could not rely on imperfect self-defense.  When a defendant claims an instruction is ambiguous and may have misled the jury, we must inquire whether there is a reasonable likelihood that the jury misconstrued or misapplied the challenged instruction. (citations omitted.)  We find no such likelihood here.
>
> First, the plain language of the sentence added by the court does not say that a cultivator of marijuana cannot rely on imperfect self-

11

> defense. To the contrary, it states that the cultivation of marijuana does not justify the use of force upon, or an attack against, the cultivator.
>
> Second, the sentence was added to the standard instruction immediately following the paragraph which informed the jury that a defendant cannot rely upon imperfect self-defense if his wrongful conduct created the danger. A reasonable jury would perceive the added sentence to be in reference to the immediately preceding paragraph. This would reinforce the plain language of the added sentence and would lead a reasonable jury to understand the court was advising that the cultivation of marijuana does not preclude the assertion of imperfect self-defense.
>
> Finally, in his argument to the jury, the prosecutor did not suggest Arriaga's participation in the cultivation of marijuana would preclude the assertion of self-defense or imperfect self-defense. Rather, the prosecutor expressly told the jury that (1) if Arriaga actually and reasonably believed it was necessary to defend himself, he was entitled to acquittal, and (2) if he actually but unreasonably believed it was necessary to defend himself, the crime would be attempted manslaughter rather then attempted murder.
>
> When we consider the evidence in the record, the arguments of counsel, and the plain language of the challenged instruction, we perceive no reasonable likelihood that the jury misconstrued and misapplied the instruction in the manner suggested by Arriaga. Accordingly, we reject this assertion of error.

(Opinion at 26-28.)

A challenge to jury instructions does not generally state a federal constitutional claim. See Middleton v. Cupp, 768 F.2d at 1085 (citing Engle v. Isaac, 456 U.S. at 119); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 672 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); See also Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (To

prevail on such a claim petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process.")  The analysis for determining whether a trial is "so infected with unfairness" as to rise to the level of a due process violation is similar to the analysis used in determining, under Brecht v. Abrahamson, 507 U.S. 619, 623 (1993), whether an error had "a substantial and injurious effect" on the outcome.  See McKinney v. Rees, 993 F.2d 1378, 1385 (9th Cir. 1993).

In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil, 843 F.2d at 317 (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  The United States Supreme Court has cautioned that "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." Middleton v. McNeil, 541 U.S. 433, 437 (2004).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).  See also United States v. Smith, 520 F.3d 1097, 1102 (9th Cir. 2008).

The decision of the California Court of Appeal that petitioner's due process rights were not violated by the giving of the modified version of CALJIC No. 5.17 at his trial was not contrary to or an unreasonable application of federal law as set forth above and should not be set aside.  First, as explained by the state appellate court, the trial court clearly added the last sentence to CALJIC No. 5.17 in order to clarify that petitioner was entitled to assert imperfect self-defense even though he was engaged in marijuana cultivation.  In any event, notwithstanding any possible confusion inherent in the last sentence of the challenged jury instruction, there is no

1 reasonable likelihood that the jurors understood the instruction to preclude consideration of
2 petitioner's defense of unreasonable self-defense. On the contrary, the jurors were specifically
3 informed by the prosecutor in closing argument that petitioner was entitled to an acquittal on the
4 charge of attempted murder if he honestly but unreasonably believed he needed to defend himself
5 when he shot the Hunts. (RT at 766.) The prosecutor's argument in this regard clarified that
6 petitioner was entitled to the defense of unreasonable self-defense in this case.[4]

7       A reviewing court must not "engage in a technical parsing of [isolated] language
8 of the instructions, but instead approach the instructions in the same way that the jury would-with
9 a 'commonsense understanding of the instructions in the light of all that has taken place at the
10 trial.'" Johnson v. Texas, 509 U.S. 350, 368 (1993) (quoting Boyde, 494 U.S. at 381).
11 Considering the record as a whole, including the entire text of the modified CALJIC No. 5.71 as
12 given and the closing argument of the prosecutor, this court concludes that the giving of the jury
13 instruction at issue in this claim did not violate the Fourteenth Amendment to the United States
14 Constitution.

15       CONCLUSION

16       For the reasons set forth above, IT IS HEREBY RECOMMENDED that
17 petitioner's application for a writ of habeas corpus be denied.

18       These findings and recommendations are submitted to the United States District
19 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty
20 days after being served with these findings and recommendations, any party may file written
21 objections with the court and serve a copy on all parties. Such a document should be captioned

---

[4] Although "arguments of counsel generally carry less weight with a jury than do instructions from the court," they may sometimes "have a decisive effect on the jury." Boyde v. California, 494 U.S. 370, 384 (1990). That is especially true here, where the prosecutor was explaining the circumstances under which petitioner could be found guilty of a lesser crime than that with which he was charged. Middleton v. McNeil, 541 U.S. 433, 438 (2004) ("Nothing in Boyde precludes a state court from assuming that counsel's arguments clarified an ambiguous jury charge. This assumption is particularly apt when it is the prosecutor's argument that resolves an ambiguity in favor of the defendant.").

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within ten days after service of the objections.  The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
5  DATED: May 21, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
gonzalez1307.hc